IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

**KRISTOPHER KENT COBB**,

    Petitioner,

v.

**BRYAN BIRKHOLTZ**,

    Respondent.[1]

Case No. 3:23-cv-1763-JE

**ORDER**

**Michael H. Simon, District Judge.**

United States Magistrate Judge John Jelderks issued Findings and Recommendation in this case on May 29, 2024. Judge Jelderks recommended that the Court dismiss Kristopher Kent Cobb's petition for writ of habeas corpus with prejudice.

Under the Federal Magistrates Act ("Act"), the Court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate." 28 U.S.C. § 636(b)(1). If a party objects to a magistrate judge's findings and recommendations, "the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." *Id.*; Fed. R. Civ. P. 72(b)(3).

---

[1] At the time that Cobb filed his petition, the prison warden at the Federal Correctional Institution in which he was held was Israel Jacquez. FCI Sheridan's current acting warden, Bryan Birkholtz, now is the appropriate defendant.

For those portions of a magistrate judge's findings and recommendations to which neither party has objected, the Act does not prescribe any standard of review. *See Thomas v. Arn*, 474 U.S. 140, 152 (1985) ("There is no indication that Congress, in enacting [the Act], intended to require a district judge to review a magistrate's report to which no objections are filed."); *United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003) (en banc) (holding that the court must review *de novo* magistrate judge's findings and recommendations if objection is made, "but not otherwise"). Although in the absence of objections no review is required, the Act "does not preclude further review by the district judge[] *sua sponte* . . . under a *de novo* or any other standard." *Thomas*, 474 U.S. at 154. Indeed, the Advisory Committee Notes to Rule 72(b) of the Federal Rules of Civil Procedure recommend that "[w]hen no timely objection is filed," the Court review the magistrate judge's recommendations for "clear error on the face of the record."

Cobb timely filed an objection, to which the Government responded. Cobb objects to both of Judge Jelderks's reasons for why the Court should dismiss this petition with prejudice.

**A. Exhaustion**

Judge Jelderks found that Cobb has not adequately exhausted his administrative remedies such that this case properly may be brought in federal court. Although Cobb concedes that he did not exhaust his administrative remedies, he asserts exhaustion should be excused as futile. The Court agrees with Cobb. Generally. "to seek habeas relief under section 2241 . . . a petitioner must first, 'as a prudential matter,' exhaust his or her available administrative remedies." *Singh v. Napolitano*, 649 F.3d 899, 900 (9th Cir. 2011). Exhaustion, however, is not a jurisdictional requirement under 28 U.S.C. § 2241. *See Ward v. Chavez*, 678 F.3d 1042, 1045 (9th Cir. 2012). Courts have discretion to waive the exhaustion requirement if, among other things, "pursuit of administrative remedies would be a futile gesture." *Laing v. Ashcroft*, 340 F.3d 994, 1000 (9th Cir. 2004) (quotation marks omitted).

PAGE 2 – ORDER

Here, Cobb's petition explicitly alleges that a Bureau of Prisons ("BOP") regulation, 28 C.F.R. § 523.42, conflicts with Congress's mandate to BOP in the First Step Act ("FSA"). Cobb alleges that because BOP followed the parameters of its own regulation—instead of the parameters of the FSA—it miscalculated his FSA earned time credits. Because BOP's alleged miscalculation stemmed from an application of its own regulation, requiring Cobb to pursue administrative remedies is unlikely to yield a different result. Moreover, given Cobb's nearness to release, the time required to further pursue administrative appeals could potentially moot Cobb's request for relief. Therefore, a waiver of exhaustion is appropriate in this case.

## B. Merits

### 1. The Challenged Regulation

Cobb bases his petition on a purported discrepancy between the FSA and a BOP implementing regulation. To understand the petition and Cobb's objection to Judge Jelderks's Findings and Recommendation, it is helpful to begin with the text of the statute and regulation.

Under the FSA, an adult in custody "who successfully completes evidence-based recidivism reduction [("EBRR")] programming or productive activities, shall earn time credits" according to the statute's guidelines. *See* 18 U.S.C. § 3632(d)(4)(A). The FSA provides that the Director of BOP "shall provide all prisoners with the opportunity to actively participate in [EBRR] or productive activities, according to their specific criminogenic needs, throughout their entire term of incarceration." 18 U.S.C. § 3621(h)(6).

The purported discrepancy comes from the meaning of the phrase "through their entire term." In 2022, BOP promulgated 28 C.F.R § 523.41, which identifies criteria for determining whether adults in custody are "successfully participating" in programming such that they are eligible to earn credit. As relevant here, 28 C.F.R § 523.41(c)(4) outlines circumstances when individuals "will generally not be considered to be 'successfully participating.'" One of these

PAGE 3 – ORDER

circumstances is "[d]esignation status outside the institution." *See* 28 C.F.R § 523.41(c)(4)(ii). Cobb asserts that this part of the regulation violates the FSA because the FSA does not exempt transfer periods. He argues that nothing about the circumstances of transfer from one BOP facility to another should make it unworkable for adults in custody to continue participating in EBRR programming.

### 2. Reasonable Reading of Petition

The parties dispute whether Judge Jelderks' reading of the petition was reasonable. Specifically, Judge Jelderks construed Cobb's petition to request time credits for time between the day that Cobb was *sentenced* and the day that he first *arrived* at a BOP facility. Respondent argues that this was a reasonable reading of the petition based on its lack of details and dates. Cobb explains, however, that his petition does not concern the time between sentencing and arrival, but rather a period of 36 days between July 25, 2023, and August 30, 2023, when he was transferred from one facility to another. The Court agrees with Respondent that there is some ambiguity in the petition as to the period of time on which Cobb's petition focuses. But after Judge Jelderks issued his Findings and Recommendation, Cobb clarified his petition, and both parties then briefed their arguments extensively. *See* ECF 26 (objections to Findings and Recommendation); ECF 33 (response); ECF 38 (reply); ECF 39 (surresponse). Based on that briefing, the parties adequately have conveyed their positions to the Court. Accordingly, the Court declines to require Cobb to engage in the formalistic exercise of seeking further administrative review or refiling his petition.

### 3. Analysis

Cobb is serving a 45-month sentence, which started at the BOP facility in Lompoc, California. He began serving his sentence on April 18, 2023, and began earning time credits on April 20, 2023. Cobb then applied for and qualified to transfer from Lompoc to the BOP facility

PAGE 4 – ORDER

in Sheridan, Oregon, to participate in Sheridan's Residential Drug Abuse Program. From July 24, 2023, through August 30, 2023, Cobb was transferred to the BOP facility in Victorville, California, and then to a private facility in Pahrump, Nevada, which was under contract with the United States Marshals Service, before arriving at Sheridan. He departed Lompoc on July 24, 2023, and arrived at Victorville on that same day. *See* Decl. of Danielle Rogowski (ECF 34) ¶ 7. He remained at Victorville until July 27, 2023, during which time he was designated as a "holdover" for institution-to-institution transfer. *Id.* He departed Victorville on July 27th and arrived at Sheridan on August 30, 2023.[2] During those 37 days of transfer time, Cobb was deemed ineligible to earn FSA time credits.

Respondent emphasizes that Cobb failed to show that he successfully participated in programming while at BOP facilities at Victorville and Pahrump. To be clear, "[s]everal courts have found that BOP reasonably interpreted the FSA in determining that eligible [adults in custody] are not 'successfully participating' in EBRR programming when in transit to or in 'the custody of another Federal or non-Federal governmental agency.'" *Stevens v. Jacquez*, 2024 WL 3200546, at *5 (D. Or. June 25, 2024) (quoting *Jobin v. Warden, FCI-Mendota*, 2024 WL 1367902, at *5 (E.D. Cal. Apr. 1, 2024); *see also Pierce v. LeMaster*, 2024 WL 439447, at *2 (E.D. Ky. Jan. 29, 2024) ("Courts have consistently upheld the BOP's decision to deny FSA credits to inmates who were unable to complete the required [productive activities] or EBRR training because they were in transit during the pertinent periods.") (collecting cases from district courts around the country).

---

[2] The parties do not provide a clear statement of how long it took for Cobb to be transported to Pahrump, how long he stayed at Pahrump, and when he departed Pahrump for his transfer to Sheridan. Based on the attachments to the Declaration of Danielle Rogowski, it appears that Cobb arrived at Pahrump on July 27, 2023, departed on August 30th, and arrived at Sheridan that same day. *See* ECF 34-2.

Cobb, however, does not argue that he *participated in* (or completed) any programming. Rather, he argues that programs should have been *made available* to him at the two facilities in which he was held from July 25, 2023, through August 30, 2023. Cobb asserts that BOP's decision—based on its regulation—categorically to deny him the opportunity to earn FSA credits for those 36[3] days violates the FSA's mandate.

The Court understands that some district courts have held that BOP may not categorically deny adults in custody the opportunity to earn EBRR credits while in transit.[4] Nevertheless, there are practical limitations on assigning and offering programming to those in transit. *See Dunlap v. Warden FMC Devens*, 2024 WL 5285006, at *8 (D. Mass. Dec. 13, 2024), *report and recommendation adopted*, 2025 WL 35248 (D. Mass. Jan. 6, 2025);[5] *But see id.* ("But it cannot be that the FSA permits the BOP to put a prisoner in 'travel status' for *months on end* for no

---

[3] Cobb asserts that he was entitled to FSA credits beginning on July 25th, his first full day at Victorville. His petition does not appear to apply to July 24th, when he was transferring from Lompoc to Victorville. *See* Petitioner's Objections to Findings and Recommendations (ECF 26) at 7. Thus, Cobb's petition requests relief for 36—not 37—days.

[4] *See, e.g.*, *Jackson v. Doerer*, 2024 WL 4719489, at *9 (C.D. Cal. Nov. 7, 2024) ("This automatic 'in-transit' exclusion by the BOP is improper under the FSA for [a number of] reasons," and "the Court is not persuaded that Petitioner could not successfully participate in programing merely because FCI Victorville is not his designated facility. The FSA does not place this limit on a prisoner's eligibility to earn time credits . . ." (footnote omitted)); *Sharma v. Peters*, 756 F. Supp. 3d 1271, 1284 (M.D. Ala. 2024) ("[T]he additional exclusions in 28 C.F.R § 523.41(c)(4)(i-iv), which are not found in the language of the FSA, cannot categorically be applied to render Sharma ineligible from earning or applying [credits] to which he may be entitled"). *See also Pelullo v. FCC Coleman – Low*, 2024 WL 3771691, at *5 (M.D. Fla. Aug. 13, 2024) ("As a final matter, the Court is not persuaded that Petitioner could not successfully participate in programming merely because he was outside of his designated facility, and therefore outside of that facility's purview. The FSA does not lay this limit on a prisoner's eligibility to earn time credits or constrain BOP's ability to review a prisoner's programing across separate BOP facilities.").

[5] In *Dunlap*, the court did not need to reach the question of "[w]hether the BOP failed in an obligation to make EBRR programming available" during the petitioner's period of transit. *Id.* at *10. By contrast, that question is squarely before the Court in this case.

obvious reason[] without making a reasonable effort to provide suitable programming." (emphasis added)).

Cobb spent one day in transit from Lompoc to Victorville. The Court does not see how BOP could provide EBRR programming to adults in custody during a one-day trip between facilities. Cobb spent a total of three days at Victorville. The Court finds persuasive BOP's assertion that he was not at Victorville long enough to start or complete any programming. Cobb again spent one day in transit from Victorville to Pahrump. He then spent about 34 days at Pahrump before taking a one-day trip to Sheridan. Respondent argues that because the Pahrump facility contracts with the United States Marshals Service—not BOP—BOP did not have an obligation[6] or the ability to provide EBRR programming there. Cobb has not presented the Court with any binding or even persuasive authorities to the contrary. But even assuming without deciding that BOP had a general obligation to provide EBRR programming at facilities contracting with the Marshals Service, BOP did not deny Cobb the opportunity to earn credit for "months on end." In the absence of Ninth Circuit instruction to the contrary, the Court declines to instruct BOP to make EBRR available to adults in custody during short, transitory periods.[7]

---

[6] Respondent cites 28 C.F.R. § 523.41(c)(4)(iii), which states in relevant part that "[a]n eligible inmate . . . will generally not be considered to be 'successfully participating' in EBRR . . . in situations including . . . [t]emporary transfer to the custody of another Federal or non-Federal government agency."

[7] Courts have made similar assessments regarding practicality in petitions concerning an adult in custody's ability to earn FSA credits in the time between his or her sentencing and arrival at his or her designated facility. In those cases, courts have given weight to the duration of the lack of access to FSA credit earning opportunities. *See, e.g.*, *Huihui v. Derr*, 2023 WL 4086073, at *7 (D. Haw. June 20, 2023) (emphasizing that "[t]his is not a situation in which the prisoner has been waiting for a month or two to be transferred. She was waiting over seven months to start earning any credits"); *Stevens*, 2024 WL 3200546, at *5 (distinguishing *Huihui* in part because "[Stevens] arrived at FCI Sheridan approximately five weeks after sentencing and was not denied the opportunity to earn FSA time credit for an unreasonable amount of time"); *Tantuwaya v. Birkholz*, 2024 WL 4805423, at *4 (C.D. Cal. Oct. 10, 2024) (explaining that "Petitioner was denied the opportunity to earn [credits] for a six-month period—far longer than

For the reasons explained in this Order, the Court ADOPTS IN PART Judge Jelderks's Findings and Recommendations, ECF 12. The Court DISMISSES with prejudice Cobb's petition for writ of habeas corpus, ECF 1, on its merits.

**IT IS SO ORDERED**.

DATED this 7th day of July, 2025.

/s/ *Michael H. Simon*
Michael H. Simon
United States District Judge

---

the 'reasonable' five-week period in *Stevens*" and citing *Huihui* in support); *Brenneman v. Salmonson*, 2025 WL 957216, at *6 (E.D. Tex. Feb. 25, 2025) ("If Huihui's seven months is too long, then naturally Petitioner's 13 months is as well."). Cobb's petition concerns a period of 36 days, which is even shorter than the period of time contemplated in *Stevens*. The Court finds that this 36-day period, as in Stevens, was not unreasonable.

PAGE 8 – ORDER